## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:10CV602
## (3:01CR178)

| | | |
|---|---|---|
| **JAMES EDWARD BYRD, III,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **MEMORANDUM** |
| **Vs.** | ) | **OF DECISION** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on respondent's Motion for Summary Judgment (#11), which is supported by the Response in Opposition to Motion to Vacate (#10) and the Affidavit of Former Counsel for Petitioner (#10-1), petitioner's Response (#19) and Affidavit (#20), and a copy of a handwritten letter (#21) filed by petitioner's former counsel in accordance with this court's Order (#17).  It appearing that the Motion for Summary Judgment has been fully briefed, the court enters the following findings, conclusions, and Order dismissing the petition.

### FINDINGS AND CONCLUSIONS

**I.    Procedural History**

Petitioner was charged along with three others in a five-count Bill of Indictment returned September 10, 2001. United States v. Byrd, et al., 3:01cr178-1 (W.D.N.C. 2001)(hereinafter"Byrd") (Byrd, Indictment, #1).  In Count One of the Indictment, the Grand Jury charged petitioner with conspiracy to possess with intent to distribute cocaine base in violation of 21, United States Code, Sections 846 and 841(a)(1) and further alleged that the conspiracy involved over 50 grams of cocaine base (hereinafter "crack" or "crack cocaine").  Id.  After trial before Honorable H. Brent McKnight, United States District Judge, the jury

returned a verdict of guilty against petitioner on November 7, 2003, as to Count One. <u>Byrd</u> Verdict, #140.[1]

On October 26, 2004, Honorable Richard L. Voorhees, United States District Judge, sentenced petitioner to 360 months of imprisonment followed by a five-year term of supervised release. <u>Byrd</u> Judgment I, #154. On direct review, petitioner appealed both his conviction and his sentence and on September 19, 2005, the Court of Appeals for the Fourth Circuit affirmed petitioner's conviction, but vacated his sentence and remanded for resentencing pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005). <u>See</u> <u>United States v. Byrd</u>, 151 F. App'x 218, 220-21 (4th Cir. 2005) (<u>Byrd</u> Opinion, Judgment, and Mandate of USCA, #s 161, 162, & 163).

On remand, Judge Voorhees convened a resentencing hearing on October 26, 2006, and entered the First Amended Judgment (<u>Byrd</u> Judgment II, #176) consistent therewith on November 16, 2006. Petitioner received 240 months' imprisonment followed by five years of supervised release, <u>Id.</u> The First Amended Judgment was thereinafter amended to correct a clerical error. <u>Byrd</u> Judgment III, #185. Petitioner appealed the Second Amended Judgment to the Court of Appeals for the Fourth Circuit, which affirmed Judge Voorhees' sentence. <u>United States v. Byrd</u>, 238 F. App'x. 948 (4th Cir. 2007) (<u>Byrd</u> Opinion, Notice of Judgment, Judgment, and Mandate of USCA, #s 194, 195, 196, & 197). Taking issue with the determination of the appellate court, petitioner sought review by *writ of certiorari* in the United States Supreme Court, which the Court granted and vacated the Second Amended Judgment (<u>Byrd</u>, #185) and remanded the action to the Fourth Circuit for further consideration in light of <u>Gall v. United States</u>, 552 U.S. 38 (2007). <u>See</u> <u>Byrd v. United States</u>, 552 U.S. 1137 (2008). After consideration of such action in light of <u>Gall</u>, the appellate court

---

[1] Petitioner's co-conspirators all pled guilty.

then remanded the case to this court for a second resentencing. <u>United States v. Byrd</u>, 278 F. App'x. 277 (4th Cir. 2008) (<u>Byrd</u> Opinion and Mandate of USCA, #s 208 & 209).

On August 11, 2008, the second re-sentencing hearing was held before Honorable Martin Reidinger, United States District Judge, and thereinafter the court entered the Third Amended Judgment on August 21, 2008, again sentencing petitioner to 240 months of imprisonment followed by five years of supervised release. <u>Byrd</u>, Judgment IV #223. Again, petitioner appealed the Third Amended Judgment to the Court of Appeals for the Fourth Circuit, which affirmed Judge Reidinger's judgment by an opinion entered January 15, 2010. <u>United States v. Byrd</u>, 361 F. App'x. 465 (4th Cir. 2010) (<u>Byrd</u> Opinion and Mandate #s 254 &255).

On November 22, 2010, petitioner timely filed the instant *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Motion to Vacate (#1). The Government answered and responded to the petition on May 24, 2011 (#10) and then filed a Motion for Summary Judgment (#11) relying on such response. Petitioner was provided with notice and instructions in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). <u>Roseboro</u> Order (#13). Thereinafter, the court extended petitioner's responsive deadline, Order (#15), and granted petitioner's request for limited discovery as to a letter in possession of his former counsel. Order (#17).[2] Petitioner timely filed his Response (#19) and Affidavit (#20). Also before the court is a copy of the letter (#21), which the court earlier ordered produced by former counsel for petitioner.

## II.    Evidentiary Issue At Trial

Central to petitioner's contentions is an evidentiary decision of Judge McKnight at trial and strategic decisions of trial counsel based on such decision. Review of the pleadings

---

[2]    The court notes former counsel's compliance with the Order allowing discovery.

as well as the transcript[3] of the trial reveals that former counsel for petitioner, Randolph M. Lee, sought to exclude testimony and other evidence under Rules 403 and 404(b) of the Federal Rules of Evidence concerning a prior state court arrest and conviction for a drug offense which also involved the sale and delivery of crack. Mr. Lee argued that there was no evidence tying petitioner's state conviction for possession of crack cocaine to the conspiracy charged in the criminal action underlying this petition. Byrd Trial Transcript #155, at 4-7, 39-58. The government responded, as follows:

> I intend to produce evidence in this case that the defendant was involved in a conspiracy during the time period alleged in the indictment, and that the arrest by Agent Broome who, of course, is also the case agent in this matter, is highly relevant. It happens right in the middle of it.

> It's the defendant possessing crack cocaine for the purpose of distribution, which he pled guilty to in state court, which I intend to introduce as evidence. What could be more relevant of a conspiracy charge to possess crack cocaine with intent to distribute than the fact that the defendant possessed crack cocaine with intent to distribute?

Id. , at pp. 5-6. The United States further responded by noting that the incident occurred during the time and in the geographic area of the charged conspiracy and arguing, therefore, that both the testimony and the state court conviction were admissible as evidence of an overt act in furtherance of the charged conspiracy. Id., at 61, 185-89.

While Judge McKnight overruled petitioner's objection, he excluded the state court conviction and petitioner's guilty plea to the drug trafficking offense under Rule 403, explaining that the conviction would only be admissible if petitioner opened-the-door by arguing that he did not possess the crack cocaine that the officer retrieved during that

---

[3] The hard copy of the transcript is in the National Archives. In reviewing the instant petition, the court reviewed a the electronic version of the trial transcripts supplied to chambers by the Official Court Reporter rather than incur the expense of retrieving the file from National Archives. As both petitioner and respondent referenced the trial transcripts in their respective pleadings, the court has reason to believe that both still have access to their transcripts.

incident. Id., at 219-223 & 257. During the trial, Judge McKnight determined that petitioner had opened the door.

Detective Phillip Broome, a detective with the Monroe Police Department, testified that on June 25, 1999, he and several other detectives were driving down Fairly Avenue in Monroe, a "well-known drug neighborhood,"when they saw a white van abruptly stop and a known drug dealer, Brian Taft Eddie, jump into the van. Id., at 228-29. Detective Broome testified that Monroe detectives, who were in plain clothes, used their blue lights to effect a traffic stop of the van. Id. According to Detective Broome, petitioner was driving the van and upon approaching the driver's side, Detective Broome saw petitioner shove what appeared to be a plastic bag with a white substance in it into his pocket. Id., at 229-30. Detective Broome testified that he asked petitioner to roll down his window and that when petitioner refused, he tried to open the door but found it locked. Id., at 230. Detective Broome testified that as another detective opened the passenger door and Mr. Eddie (who had jumped in the van earlier) was exiting, petitioner sped off even though the other detective was standing in front of the opened passenger door of the van. Id.

A two block chase ensued, after which petitioner pulled the van over and he was arrested. Id., at 231-32. After placing petitioner in custody, Detective Broome walked the two blocks back and picked up a plastic bag that appeared to be the same bag he had seen when he initially approached the van. Id., at 232. Detective Broome testified that the bag was found to contain twenty-four grams of crack cocaine, id., at 232-33, and that such amount of crack was consistent with distribution. Id., at 234.

On cross-examination, Mr. Lee questioned Detective Broome about another incident that preceded the June 25 incident, during which Mr. Eddie had been involved in a traffic stop based on a report of possible narcotics activity inside the same automobile. Trial

Transcript at 239-41. He also cross-examined Detective Broome about the June 25 incident report, pointing out to the witness that: (1) he did not indicate in the report, as he did at trial, that he saw petitioner "trying to manipulate or handle a baggie," id., at 244; (2) Detective Broome found the bag approximately 300 yards from where he first made the stop; and (3) that he had not sent the bag for fingerprint analysis. Id., at 246.

Following cross-examination, the United States argued that, through this cross-examination, petitioner had suggested that he was not responsible for the plastic bag or the crack cocaine found therein, thereby opening the door to the admission of petitioner's judgment of conviction and the guilty plea stemming from the June 25 incident.[4] Id., at 251-54. In response to such argument, petitioner's counsel explained that he understood that he would be opening the door only if he elicited statements from petitioner denying that the crack cocaine belonged to him. He further argued that he had a duty to cross-examine Detective Broome and to elicit testimony inconsistent with his earlier testimony as to where he found the cocaine and investigative techniques. Id., at 255. The court held, as follows:

> First, I would just like to say that in light of one of Mr. Lee's comments before we took our little break, I never restricted opening the door to the defendant's testifying. Never restricted it to the defendant's taking the stand. What I said was if the door was opened, it could come in.

> And having carefully reviewed all of the arguments and testimony, it's my conclusion that Mr. Lee has opened the door to that argument, so that the guilty plea becomes relevant and admissible couched in the 403 rubric of the balance between probative value and prejudice.

> I find that in light of the developments of the testimony, the probative value now is not outweighed by the prejudice, so I will let it in.

Id., at 257. In granting the government's request, Judge McKnight stated that the court had

---

[4]     Such documents clearly established that petitioner pled guilty to possession with intent to sell or deliver the crack cocaine seized by Detective Broome on June 25.

not limited the opening of the door only through testimony by petitioner. The court determined that because petitioner challenged Detective Broome's testimony about the bag of crack cocaine, the probative value of the conviction was no longer outweighed by the danger of unfair prejudice. Id., at 257. Accordingly, the court admitted Petitioner's guilty plea to the state court offense. Id., at 264-66.

On redirect, Detective Broome testified that petitioner pled guilty to one count of possession with intent to manufacture, sell and deliver a Schedule II controlled substance. Id., at 265.

## III. Other Trial Testimony Relevant to the Petition

Petitioner's contentions also concern the at-trial testimony of one of his co-conspirators, Terry Lamont Huntley. Mr. Huntley, who pled guilty prior to petitioner's trial, testified that between 1998 and 1999 he regularly purchased an ounce or an ounce-and-a-half of crack cocaine from petitioner for purposes of resale. Id., at 103-04, 106. Although Mr. Huntley testified that his primary supplier was another individual named Robert Ashcraft, he stated that when Mr. Ashcraft did not have any crack, he would find petitioner and purchase an ounce or an ounce-and-a-half from him. Id., at 107-08. In total, Mr. Huntley testified that he purchased between two-and-a-half and three kilograms of crack cocaine from petitioner during 1998 and 1999. Id., at 115. Mr. Huntley testified further that he purchased this crack from petitioner on Fairly Avenue in Monroe, id., at 116-17, and that he was present on one occasion when petitioner sold crack to Mr. Ashcraft. Id., at 118.

On cross-examination, Mr. Lee asked Mr. Huntley about a debriefing he provided federal agents after he was indicted in this case. Id., at 154-57. In response, Mr. Huntley acknowledged that he had not mentioned petitioner during his debriefing, explaining that he was discussing people who were "still on the streets" in the debriefing. Id., at 165.

Consistent with that testimony, Detective Broome later testified that when he debriefed Mr. Huntley, he was not concerned with the persons already named in the indictment against petitioner, but with persons still on the street and active in drug trafficking. Id., at 227-28.

## IV.   Petitioner's Contentions

The court has carefully considered the petition and determined that petitioner has asserted the following contentions in support of his Motion to Vacate the Third Amended Judgment:

> I.   Petitioner's due process right to a fair trial was violated through the presentation of Mr. Huntley's false testimony;
>
> II.   Petitioner was afforded ineffective assistance by trial counsel:
>
> > (A)   Mr. Lee failed to investigate, interview, and call witnesses who would have provided favorable testimony;
> >
> > (B)   Mr. Lee improperly opened the door in his cross examination of Detective Broome, thereby permitting the government to put on evidence concerning petitioner's plea of guilty concerning the June 25 incident;
> > and
>
> III.   Petitioner was afforded ineffective assistance by Mr. Lee, who also served as appellate counsel:
>
> > (A)   Mr. Lee should have raised on appeal that the government violated the requirements of Brady v. Maryland, 373 U.S. 83 (1963);
> >
> > (B)   Mr. Lee should have raised on appeal the trial court's improper admission of evidence in violation of Rule 403.

The court will address each contention and subcontention *seriatim*.

## V.   Applicable Standard

The government has moved for summary judgment on the petition.[5] Rule 56(a),

---

[5]      While not stated in the caption, review of the petitioner's Response to the motion for summary judgment reveals that he mentions that he too is moving for summary judgment. Local Civil Rule 7.1(C)(1) does not permit a party to include a motion in the text of a response;

Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for petitioner to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
>> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>>
>>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>>
>> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>>
>> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>>
>> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

---

however, the court has given full consideration to all of petitioner's arguments, regardless of form.

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252

## VI.  Discussion

### A.  Petitioner's Right to a Fair Trial

In his first contention, petitioner argues that his due process right to a fair trial was violated through the presentation of Mr. Huntley's purportedly false testimony. Such issue was not raised on direct review and is, therefore, procedurally barred. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998).

> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643-2644, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-2507, 53 L.Ed.2d 594 (1977), or that he is "actually innocent," *Murray, supra*, at 496, 106 S.Ct., at 2649-2650; *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667-2668, 91 L.Ed.2d 434 (1986).

Id., at 622. In order to collaterally attack a conviction or sentence based upon alleged errors that could have been, but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of *or* that he is actually innocent. See United States v. Mikalajunas, 186 F.3d 490, 492, 93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

To show "cause" for a procedural default, petitioner must demonstrate that some objective factor external to the record impeded his counsel's efforts to bring a claim on direct

appeal. Murray v. Carrier, 477 U.S. 478, 497 (1986); Turner v. Jabe, 58 F.3d 924, 927 (4th Cir. 1995). It is not enough that counsel failed to present an argument that was unlikely to succeed; rather, cause only exists based on counsel's failure to present the claim if the claim "'is so novel that its legal basis is not reasonably available to counsel.'" Bousley, at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). In order to establish "actual prejudice" a petitioner must show "not merely that the errors at his trial create[d] a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, at 167-68, 170 (1982) (emphasis deleted). To show "actual innocence," a petitioner must show by clear and convincing evidence, United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999), that it is more likely than not that no reasonable juror would have convicted him because of his "factual innocence, not mere legal insufficiency." Bousley, at 623.

Petitioner argues that his due process right to a fair trial was violated through the presentation of Mr. Huntley's testimony (discussed briefly above), which testimony petitioner contends was false. In support of such contention, petitioner has provided the court with the Affidavit of Donnell Sturdivant (#20), at p. 3 (hereinafter "Sturdivant Aff."), who avers that he was incarcerated with Mr. Huntley and that Mr. Huntley told Mr. Sturdivant in 2003 that he was going back to court to testify against petitioner and when he returned to the prison some months later he stated that he had gotten three years off "for getting on the stand on James Byrd." Sturdivant Aff., at ¶ 1. While Mr. Sturdivant's statement, taken as true, would tend to impeach Mr. Huntley's testimony, it does not establish actual innocence sufficient to overcome the procedural bar. First, Mr. Sturdivant's averment as to what Mr. Huntley said to him is inadmissible hearsay. Fed. R. Evid. 802. Second, even if such were admissible, such impeaching statement does not establish by clear

and convincing evidence petitioner's factual innocence.

Petitioner has neither met his burden in establishing cause and actual prejudice *or* showing that he is factually innocent. Petitioner has, therefore, defaulted this contention, which bars the requested collateral review.

## B.    Ineffective Assistance of Trial Counsel

In his second contention, petitioner contends that his conviction should be vacated because he received ineffective assistance by trial counsel. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687, 687-91 (1984).

In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id., at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id., at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citation omitted).

If the petitioner fails to show prejudice, a reviewing court does not need to consider or review the performance prong. Id., at 1290. When review reaches the prejudice prong of analysis, the court must not grant relief solely because the petitioner can show that the outcome would have been different, but for counsel's performance. Sexton v. French, 163

F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999).  Rather, the court "can only grant relief under ... <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'"  <u>Id.</u>, quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364 U.S. 364, 369 (1993).

## 1.    Failure to Investigate, Interview, or Call Favorable Witnesses

Petitioner first contends that Mr. Lee was ineffective at trial because he failed to investigate, interview, and call witnesses who would have provided favorable testimony.[6]

### a.    Susan Williams

Petitioner asserts that, if called, Susan Williams would have testified that she had never heard of Mr. Huntley,[7] who testified that he knew Ms. Williams.  Petititioner's Memorandum in Support of Petition, at 1-2.  Mr. Huntley testified, in relevant part, as follows:

> Well, I had heard about him [petitioner] a few times. And I would say like the first of '98, a local smoker named Charles and Susan Williams, they turned me on to him. What I mean by turned me on was introduce me.

Trial Transcript, at 103.[8]  Petitioner asserts further that notwithstanding his numerous requests of Mr. Lee to contact Ms. Williams, Mr. Lee never did so, insisting that the government "[did] not have anything on [him]."  <u>Id.</u>, at 2.

Petitioner's claim of ineffective assistance of counsel fails because petitioner has not shown how counsel's failure to call Ms. Williams was prejudicial or that the result of the proceeding was fundamentally unfair or unreliable.  Mr. Lee avers it was his recollection that

---

[6]    While the undersigned was not the trial judge, this court has closely reviewed the trial transcripts and has independently concluded that Mr. Lee provided petitioner with highly skilled trial representation.  Mr. Lee fully engaged Judge McKnight –  a judge renowned for his legal scholarship – in a detailed evidentiary discussion concerning Rules 403 and 404.

[7]    <u>See</u> Affidavit of Susan Williams (#20).

[8]    Such quote is the only mention made by Mr. Huntley or anyone else of Ms. Williams that the court can find in the entire trial transcript.

Ms. Williams was a user of illegal drugs and that both she and her boyfriend were having problems with the police. Mr. Lee states that it was his professional judgment that Ms. Williams testimony would have been weak and ineffective. When viewed in context with counsel's analysis that Ms. Williams would have been a weak witness for purposes of impeachment of Mr. Huntley, petitioner's claim fails under both prongs of <u>Strickland</u>. <u>See</u> Govt. Exh. 1, at ¶ 4. Clearly, such strategy was reasonable, especially where the testimony concerning the introduction by Ms. Williams and "Charles" was minimal and the strength of the proposed impeaching witness was questionable at best.

Mr. Lee further explains his trial strategy by stating that while Mr. Huntley was the only co-conspirator to testify against petitioner, he knew from the discovery that other individuals were believed to have been involved in drug trafficking with petitioner and that Mr. Lee's objective was to restrict the scope of the conduct that would come out at trial, by, for example, arguing vigorously against the admission of testimony of evidence concerning the June 25, 1999, incident. <u>Id.</u> Strategic decisions not to call a witness because of a fear that the witness could be impeached and would ultimately harm a defendant's case more than help it is the type of strategic judgment that rests with counsel, which this court will not find to amount to deficient representation as long as such judgment is reasonable. In reviewing such judgment calls, this court's duty is to avoid the distorting effects of hindsight and to apply a "heavy measure" of deference to the judgment of trial counsel. <u>United States v. Roane</u>, 378 F.3d 382, 410 (4th Cir. 2004). Indeed, an attorney has the authority to manage most aspects of the defense without first obtaining the consent of the defendant <u>United States v. Chapman</u>, 593 F.3d 365, 367-68 (4th Cir. 2010). Mr. Lee's affidavit establishes that his decision not to call Ms. Williams as a witness was reasonable and, therefore, not a violation of <u>Strickland</u>.

### b. Kevin Felker

Petitioner also contends that it was ineffective for Mr. Lee not to call Kevin Felker, a person with whom petitioner contends he was a partner "in a reputable residential painting business." Petititioner's Memorandum in Support of Petition, at 1-2. Petitioner contends that Mr. Felker would have testified that he and petitioner worked in the painting business six-to-seven days a week in various counties and for long hours, which he contends would have contradicted the government's evidence that he was actively engaged in a drug trafficking conspiracy. Id.

The court has reviewed Mr. Lee's affidavit as to why he did not call Mr. Felker as a witness in support of petitioner or to impeach Mr. Huntley. Mr. Lee explains that Mr. Felker had significant "problems of his own with the federal government" and that Mr. Felker was described to Mr. Lee as having been a member of the Ku Klux Klan. Exh. 1, at ¶ 5. Additionally, there were no payroll records to substantiate petitioner's claim that he had worked with Mr. Felker, and Mr. Lee notes that Mr. Byrd admitted in 2000 (during the time period that the conspiracy operated) that he was unemployed. Id. Mr. Lee also avers that when he spoke with Mr. Felker about testifying for petitioner, Mr. Felker's level of support for petitioner was "weak." Id. The record does not contain an affidavit from Mr. Felker.

Clearly, Mr. Lee's strategic decision to not call Mr. Felker was reasonable as counsel was unable to verify petitioner's claim that he worked with Mr. Felker and because Mr. Felker's credibility appeared to be easily assailable by the government on cross-examination. Further, such theory of defense appeared to have been fatally flawed based on petitioner's own admission that he was unemployed during the relevant period.

### 2. Counsel Opened the Door, Which Allowed the Government to Put on Evidence That Would Have Been Otherwise Excluded

Petition also contends that Mr. Lee provided ineffective representation because he improperly opened the door in his cross examination of Detective Broome, thereby permitting the government to put on evidence concerning petitioner's plea of guilty in state court to charges arising from the June 25 incident.  Review of the entire record, however, reveals that had Mr. Lee not challenged Detective Broome's testimony based on the perceived inconsistency at to the location of the drugs, the result would have been no different than it was with the admission of the prior conviction: either way, petitioner was faced with damaging evidence that he in fact possessed the crack cocaine that was discovered during the June 25 incident.

In any event, evidence that petitioner admittedly possessed crack cocaine with the intent to sell or deliver during the time period and in the same geographic location as the conspiracy was alleged to have operated is probative of petitioner's guilt.  See  United States v. Stitt, 250 F.3d 878, 888 (4th Cir. 2001).  Clearly, Count One of the Bill of Indictment alleged "[f]rom in or about January 1997, and continuing until the present time [September 10, 2001], in Union County . . . ."  Byrd Indictment (#1).  The charge which petitioner pled guilty to was sale and delivery of crack cocaine in Union County within the time period covered by the Indictment in the federal criminal action.  Rule 403 provides in relevant part that

> evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.  Rule 404(b) then provides, in relevant part, that evidence of other crimes, wrongs, or acts is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...."  Id.

Judge McKnight admitted that evidence, holding as follows: "I find that in light of the developments of the testimony, the probative value now is not outweighed by the prejudice, so I will let it in." Trial Transcript, at 257.

While petitioner is correct that the cross examination did in fact open the door, such strategic decision by counsel is well within the wide range of acceptable representation allowed under <u>Strickland</u> and was reasonable as the only other choice was to leave Detective Broome's testimony, which clearly placed petitioner in possession of distribution amounts of crack cocaine, unchallenged in the minds of the jurors.

This court can find no deficiency in Mr. Lee's decision or the substance of his actual examination of Detective Broome, even in light of opening the door to admission of petitioner's state court conviction. Petitioner has not satisfied his burden of establishing reasonable probability that, in the absence of the evidence of the conviction itself, he would have been acquitted. Mr. Huntley's testimony established petitioner's participation in the conspiracy and, had counsel for petitioner not rigorously cross-examined Detective Broome, that testimony would have been left unimpeached and provided the jury with ample evidence upon which to return a verdict of guilty to Count One. Petitioner has neither shown deficient representation or prejudice. Finding that petitioner in fact received effective representation as the strategic decisions of trial counsel were reasonable, this contention will be dismissed.

### C. Ineffective Assistance of Appellate Counsel

In his final contention, petitioner alleges he was afforded ineffective assistance by appellate counsel, who was also Mr. Lee. From the outset, the recitation of the procedural history of this case patently reveals that petitioner received remarkably effective assistance by appellate counsel. Indeed, counsel was not only successful in having this court's judgments repeatedly overturned by the appellate court, he was successful in having an

adverse appellate decision overturned by the United States Supreme Court. Through his appellate advocacy, appellate counsel was able to have petitioner's sentence reduced from 360 months to 240 months, a remarkable accomplishment. Despite the patent problems with petitioner's assertion, the court will carefully consider each subcontention.

### 1.     Failure to Raise the **Brady** Issue on Appeal

Petitioner first contends that Mr. Lee should have raised on appeal petitioner's belief that the government violated the requirements of Brady, supra. This claim is based on petitioner's assertion that Mr. Lee told him that Detective Broom had said to him that he had put petitioner in the "wrong conspiracy" and that, based on this comment, Mr. Lee should have further inquired into Brady material. Petitioner's Motion to Vacate, at 20. In his affidavit, Mr. Lee explains that while he may have reported such a statement to petitioner, the context of the statement was that, because all co-defendants had pled guilty, he was not able to cooperate effectively against any of those individuals. Govt. Exh. 1, at ¶ 6.

When viewed in context with Mr. Lee's affidavit, the statement attributed to Mr. Lee does not suggest any failure by the government to turn over Brady material. Indeed, the actions of counsel during the course of the trial indicate that despite repeated requests for any additional Brady material and/or prior witness statements under the decision of Jencks v. United States, 353 U.S. 657 (1957), see Trial Transcript, at 71-82, the United States assured Mr. Lee that the government had disclosed all discovery subject to either Brady or Jencks. Mr. Lee argued during trial, and outside the presence of the jury, as follows:

> I think we're entitled to have all those reports and memoranda because I think my cross will allow me to establish that at that time there was no connection made whatsoever between these defendants and Mr. Byrd. And that, of course, segues into the possible *Brady* issues as well.

Trial Transcript, at 72.

There being absolutely no support in the record that any <u>Jencks</u> or <u>Brady</u> material was withheld, and it appearing that the statement relayed by Mr. Lee and attributed to Detective Broome would not have formed the basis of an appellate issue, petitioner's contention that failure to raise a <u>Brady</u> issue on appeal shows ineffective assistance of appellate counsel is without merit.

## 2. Failure to Raise the Rule 403 Issue

Finally, petitioner contends that Mr. Lee should have raised on appeal the trial court's allegedly improper admission of evidence in violation of Rule 403, discussed at length above. Such decision not to raise the issue on appeal was reasonable inasmuch as, while the evidence admitted was clearly prejudicial to petitioner, the Rule 404(b) decision by Judge McKnight was not unfairly prejudicial when weighed against its probative value. <u>United States v. Byers</u>, ___ F.3d ___, 2011 WL 1718895, at *10 (4th Cir. May 6, 2011). The Court of Appeals for the Fourth Circuit has developed a four-part test for admission of prior-act evidence:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact finding process.

<u>United States v. Queen</u>, 132 F.3d 991, 997 (4th Cir.1997). Clearly, Judge McKnight's admission of such evidence clearly met the test in <u>Queen</u>. Further, had Mr. Lee challenged such decision on appeal, it would have been patently futile as the standard of review of a trial judge's evidentiary call is quite limited:

[w]e review a trial court's rulings on the admissibility of evidence for abuse of

discretion, and we will only overturn an evidentiary ruling that is "arbitrary and irrational." *United States v. Blake*, 571 F.3d 331, 346 (4th Cir.2009). To that end, we "look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Udeozor*, 515 F.3d 260, 265 (4th Cir.2008) (*quoting United States v. Simpson*, 910 F.2d 154, 157 (4th Cir.1990)).

United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011). As petitioner had no reasonably viable claim to assert, Mr. Lee cannot be faulted for failing to raise it on appeal

## VII. Conclusion

The court, having considered the pleadings and documents submitted by the parties and the entire record of this matter, finds that petitioner is not entitled to relief on any of his claims.

## ORDER

**IT IS, THEREFORE ORDERED** that:

(1)    the government's Motion for Summary Judgment (#11) is **GRANTED**;

(2)    petitioner's Motion to Vacate, Set Aside, or Correct Sentence (#1) is **DENIED** and the Section 2255 Petition is **DISMISSED** with prejudice; and

(4)    pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

The Clerk of this Court is instructed to enter Judgment in accordance herewith, and to enter a copy of this Order in the underlying criminal action.

Signed: October 7, 2011

Max O. Cogburn Jr.
United States District Judge